Mara D. Curtis (SBN 268869)
Brian M. Noh (SBN 293564)
Tanner J. Hendershot (SBN 346841)
REED SMITH LLP
515 South Flower Street, Suite 4300
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080
Email: mcurtis@reedsmith.com
bnoh@reedsmith.com
thendershot@reedsmith.com

Attorneys for Defendants
ALBERTSON'S LLC, ALBERTSONS COMPANIES, INC., and ALBERTSONS SAFEWAY LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMMANUEL HARO, on behalf of himself and all others similarly situated, and the general public,<br><br>*Plaintiff*,<br><br>vs.<br><br>ALBERTSON'S LLC, a Delaware corporation; ALBERTSONS COMPANIES, INC., a Delaware corporation; ALBERTSONS SAFEWAY LLC, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>*Defendants*. | Case No. **'26CV2120 RSH DDL**<br><br>[Superior Court of California, San Diego, Case No. 26CU011414C]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. 1331, 1332, 1367, 1441, AND 1446**<br><br>Complaint Filed: February 26, 2026<br>Trial Date: None |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF EMMANUEL HARO AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Albertson's LLC ("Albertson's"), Albertsons Companies, Inc., and Albertsons Safeway LLC (collectively, "Defendants") hereby remove this action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California. Defendants remove this action pursuant to 28 U.S.C. §§ 1331, 1332(d) (the Class Action Fairness Act of 2005), 1367, 1441, and 1446 on the following grounds:

**STATEMENT OF JURISDICTION**

1. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), which amended 28 U.S.C. § 1332 to provide that a putative class action is removable to federal court if the proposed class consists of at least 100; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and one member of the proposed class is a citizen of a state different from any defendant. See 28 U.S.C. § 1332(d). The Act authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As demonstrated below, this action meets all of CAFA's removal requirements and is timely and properly removed by the filing of this Notice.

**PLEADINGS, PROCESS AND ORDERS**

2. On or about February 26, 2026, Plaintiff Emmanuel Haro ("Plaintiff") filed a Complaint in the Superior Court of the State of California in and for the County of San Diego, entitled *Emmanuel Haro, on behalf of himself and all others similarly situated, and the general public v. Albertson's LLC, et al.,* Case No. 26CU011414C (hereinafter the "Complaint" in the "State Court Action"). *See* Complaint (attached as Ex. 1 to the Declaration of Brian M. Noh ("Noh Decl."), ¶ 2(a)).

3. The Complaint is a purported class action alleging the following causes of action: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay hourly wages and overtime; (4) failure to pay proper sick pay; (5) failure to pay

proper vacation wages; (6) failure to provide accurate written wage statements (Lab Code §§ 226); (7) failure to timely pay all final wages; (8) failure to indemnify; and (8) unfair competition. *Id.*

4. A copy of the Summons and Complaint was served on each Defendant for service of process on March 5, 2026. Declaration of Abrina Wheatfall ("Wheatfall Decl.") ¶ 9, Ex. 1.

5. To Defendants' knowledge, as of the date of this Notice of Removal, no other parties have been named. Does 1-50 are presently unnamed and unknown and, therefore, have not been served with the Complaint.

6. The Initial Case Management Conference is scheduled for August 14, 2026, 10:30 a.m. in the State Court Action. The documents in the State Court Action to date are: (1) the Complaint; (2) Civil Case Cover Sheet; (3) Summons; (4) Proof of Service of Summons on each Defendant; (5) Notice of Case Assignment; (6) Notice to Litigants; and (7) Stipulation to Alternative Dispute Resolution Process. Noh Decl., ¶ 2(a)-(g). On April 3, 2026, Defendants filed an Answer to the Complaint. Noh Decl., ¶ 4. There are no additional hearings or other proceedings in the State Court Action, and Defendants have not received or filed any papers or pleadings in the State Court Action other than those attached as Exhibits 1-8 to the Noh Declaration.

**JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT**

7. Section 4 of CAFA sets forth the general rule that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which …any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

8. Section 4 of CAFA further states that the jurisdictional rule set forth in 28 U.S.C. § 1332(d)(2) applies only to class actions in which the number of members of all proposed plaintiff classes, in the aggregate, is 100 or more. 28 U.S.C. § 1332(d)(5).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

9. This Court has jurisdiction pursuant to CAFA, 28 U.S.C. § 1332(d), and this action may be removed by Defendants pursuant to the provisions of 28 U.S.C. § 1441(a), because the proposed plaintiff class consists of at least 100 members, the total amount in controversy exceeds $5,000,000, and there is diversity between at least one proposed class member and one defendant.

10. Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. § 84(b), 1441, and 1446(a). The State Court Action was originally brought in the San Diego County Superior Court, which is located within the Southern District of California. Venue is proper with this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

11. All defendants that have been named have been served and join in the removal.

12. Plaintiff brought this action as a class action pursuant to California Code of Civil Procedure § 382, a state statute authorizing an action to be brought by one or more representative persons as a class action. Compl., ¶ 13. Plaintiff seeks to represent "[a]ll persons employed by Defendants, collectively or separately, and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California four years prior to the filing of this action and ending on the date that final judgment is entered in this action" ("Putative Class" or "Putative Class Members"). Compl., ¶ 14.a-d. Plaintiff divides the Putative Class into a Meal Period Subclass, Rest Period Subclass, and Waiting Time Penalties Subclass. *Id.*

13. Plaintiff also seeks to represent a Sick-Pay Class, Vacation Pay Class, Wage Statement Class, Expense Reimbursement Class, and UCL Class. Plaintiff defines the Sick-Pay Class as "[a]ll persons employed by Defendants in California who, at any time during the Relevant Time Period, worked for more than 30 days for Defendants, and were not paid for at least one hour of sick time for every 30 hours of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

work thereafter, or at least 3 days of sick time for every 12-month period of employment." *Id.* ¶ 14.e.

14. The Vacation Pay Class is defined as "[a]ll persons employed by Defendants in California who earned paid vacation time and/or paid time off without receiving compensation for all vested paid vacation time during the Relevant Time Period." *Id.* ¶ 14.f

15. The Wage Statement Class is defined as "[a]ll persons employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered." *Id.* ¶ 14.g.

16. The Expense Reimbursement Class is defined as "[a]ll persons employed by Defendants in California who incurred business expenses during the Relevant Time Period." *Id.* ¶ 14.h

17. The UCL Class is defined to include the Putative Class and the Expense Reimbursement Class Members employed by Defendants in California during the four years prior to the filing of this action and ending on the date that final judgment is entered in this action. *Id.* ¶ 14.i

**The Purported Class Contains At Least 100 Members**

18. In the Complaint, Plaintiff alleges that the Putative Class Members "are so numerous that the individual joinder of each individual class member is impracticable." Compl., ¶ 16.

19. Plaintiff was employed by Albertson's. Declaration of Bruce Frazier ("Frazier Decl."), ¶ 3. The aggregate number of hourly non-exempt employees that were employed by Albertson's between February 26, 2022 to March 31, 2026 is at least 27,068. *Id.* at ¶ 3a. Therefore, there are over 100 Putative Class Members.

///

**There Is Diversity of Citizenship Between**
**At Least One Proposed Class Member And One Defendant**

20. CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C §§ 1332(d)(2)(A); 1453(b). Complete diversity of citizenship exists here because Plaintiff and Defendants are citizens of different states. Plaintiff is a citizen of California. All Defendants are citizens of Delaware and Idaho. Wheatfall Decl., ¶¶ 3-8.

21. **Plaintiff's Citizenship.** For diversity purposes, a person is a "citizen" of the state in which they are domiciled. *See Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *See Kanter v. Warner-Lambert Clew & Moss*, 797 F.2d 747, 749-750 (9th Cir. 1986).

22. According to the Complaint, at the time this action was commenced and at the time of removal, Plaintiff was a resident of California. Compl., ¶ 5. The allegations by Plaintiff establish that he is a citizen of the State of California. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22-23 (E.D. Cal. 2008) (alleged place of residence provides "prima facie" proof of domicile). Accordingly, Plaintiff is a citizen of the State of California for purposes of removal.

///

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

23. **Albertson's Citizenship.**[1] Albertson's LLC is a limited liability company and is now, and was at the time this action commenced, a citizen of the states of Delaware and Idaho. Wheatfall Decl., ¶¶ 3-8. Under traditional diversity principles, the citizenship of a limited liability company is determined by examining the citizenship of each member of the company. *Carden v. Arkoma Assocs*., 494 U.S. 185, 195–96 (1990); *Johnson v. Columbia Properties Anchorage L.P*., 437 F.3d 894, 899 (9th Cir. 2006). The citizenship of a corporation, instead, is "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "Principal place of business means the corporate headquarters where a corporation's high-level officers direct, control, and coordinate its activities on a day-to-day basis, also known as the corporation's 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2000). A corporation's nerve center is a "single place" and "should normally be the place where the corporation maintains its headquarters." *Id.* at 93. Relevant factors include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets, and where day-to-day control over the company is executed. *See, e.g., Tomblin v. XLNT Veterinary Care, Inc*., Case No. 09-cv-1940 BTM (JMA), 2010 WL 2757311, at *4-5 (S.D. Cal. July 12, 2010).

24. Recent Ninth Circuit district courts have held that, in a CAFA case, the traditional rule concerning the citizenship of a limited liability company is replaced by a rule treating them as unincorporated associations whose citizenship is determined by the principal place of business and state under whose laws it is organized. *Hernandez v. Pure Health Rsch. LLC*, Case No. 23-cv-00971-BAS-DEB, 2023 U.S. Dist. LEXIS

---

[1] CAFA's "home state" exception does not apply to this case. The home state exception requires: (1) two-thirds or more of the members of the proposed class in aggregate to be citizens of the state in which the action is filed; and (2) all the "primary defendants" to be citizens of the state in which the action is filed. 28 U.S.C. § 1332(d)(4)(B); *Harrington v. Mattel, Inc*., 2007 WL 4556920, at *4-5 (N.D. Cal. Cal. Dec. 20, 2007). Here, Defendants are not citizens of California and thus the "home state" exception does not apply. Similarly, CAFA's "local controversy" exception is not applicable because Defendants are not citizens of California and thus all requirements per 28 U.S.C. § 1332(d)(4) cannot be met. Therefore, 28 U.S.C. § 1332(d)(5)(A) is also not applicable.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

191909, at *6 (S.D. Cal. Oct. 25, 2023); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 714–16 (N.D. Cal. 2021) (recognizing that in CAFA actions an LLC's citizenship is determined by principal place of business and State of organization); see also *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 & n.13 (9th Cir. 2009) (holding that a limited partnership is an unincorporated association under CAFA) (Kleinfeld, J., concurring). CAFA states that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Under either rule, however, Albertson's is a citizen of the state of Idaho and Delaware, and not a citizen of California, so diversity of citizenship is met.

25. If the traditional limited liability citizenship rules apply, Albertson's is now, and was at the time this action was commenced, a citizen of the states of Delaware and Idaho within the meaning of 28 U.S.C. § 1332. Wheatfall Decl., ¶ 3. Albertson's is a limited liability company. The citizenship of a limited liability company is traditionally determined by examining the citizenship of each member of the company.

26. Here, the sole member of Albertson's LLC is Albertson's Safeway LLC, a limited liability company incorporated under the laws of Delaware with its principal place of business in Boise, Idaho. Wheatfall Decl., ¶¶ 4-5. The sole member of Albertsons Safeway LLC is Albertsons Companies, Inc. *Id.* at ¶¶ 6. Albertsons Companies, Inc. is now, and was at the time this action was commenced, a citizen of the states of Idaho and Delaware within the meaning of 28 U.S.C. § 1332. *Id.* at ¶¶ 6-8. Albertsons Companies, Inc. is a corporation organized and existing under the laws of the state of Delaware with its headquarters and principal place of business located in Idaho. *Id.* In *Hertz Corp. v. Friend*, the United States Supreme Court held that the "nerve center" test is used to determine a corporation's "principal place of business." 130 S. Ct. 1181, 1192 (2010). To this end, the Court reasoned that a corporation's "nerve center" is normally located where the corporation maintains its corporate

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

headquarters and where the "corporation's officers direct, control, and coordinate the cooperation's activities." *Id.* Albertsons Companies, Inc.'s principal place of business is indisputably Idaho based upon the following factors[2]: (1) it is where the company's corporate headquarters are located; (2) it is where the company's direction, control, and coordination of its business activities takes place; (3) where many of the company's high-level executive and administrative operations are managed and operated; (4) where company-wide policy decisions are made; (5) where the CHRO has an office; and (6) where the day-to-day management of the company's national business is conducted. Wheatfall Decl., ¶ 8.

27. If the now recognized CAFA rules for of a limited liability company apply, Albertson's is now, and was at the time this action was citizenship commenced, a citizen of the states of Delaware and Idaho. Wheatfall Decl., ¶ 3. Albertson's was and at all times herein, incorporated under the laws of Delaware and has its principal place of business in Boise, Idaho. *Id.* Here, Albertson's principal place of business is indisputably Idaho based upon the following factors: (1) it is where the company's corporate headquarters is located; (2) it is where the company's direction, control, and coordination of its business activities takes place; (3) it is where high-level executive and administrative operations are managed and operated, and certain corporate-wide functions, such as legal, finance, accounting, marketing, and human resources are directed to the applicable division; (4) it is where company-wide policy decisions are made; and (5) it is where the day-to-day management of Albertson's business takes place. *Id.*

28. **<u>Doe Defendants</u>**. Plaintiff has also named as Defendants Does 1 through 50. For purposes of removal based on diversity, "the citizenship of Defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b); *see Fristoe v.*

[2] These factors have previously been considered by courts in determining a corporation's "nerve center." *See, e.g., Inger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964); *see also, State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989).

*Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed Defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc*., 311 F.3d 966, 971 (9th Cir. 2002) (same). The existence of the alleged Doe Defendants thus does not impact this Court's removal jurisdiction. *Albrego v. Dow Chemical Co*., 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied to CAFA removal).

**Alleged Amount In Controversy Exceeds $5,000,000**

29. Under CAFA, the articulated claims of all class members are aggregated to determine if the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6). Significantly, Congress intended federal jurisdiction to exist under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Staff of S. Comm. on the Judiciary, 109th Cong., *Rep. on The Class Action Fairness Act of 2005*, 42 (Comm. Print 2005). The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

30. When determining the amount that a plaintiff has placed in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal citations and alterations omitted). A district court may consider the allegations of the complaint and the contents of the removal petition and any supporting evidence in determining whether the jurisdictional amount has been established. *See Singer v. State Farm Mutual Auto Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

31. Defendants deny Plaintiff's allegations of misconduct and intend to defend themselves vigorously against all of Plaintiff's causes of action. Nevertheless, and without admitting that Plaintiff and/or any member of the putative class can recover any damages, when one considers the number of alleged Putative Class Members, the number of alleged violations of California law, the statute of limitations period embraced by the claims, and the class definition alleged in the State Court Action, the aggregate amount in controversy presented by the case exceeds $5,000,000 for purposes of removal based on the following:

32. For purposes of determining the aggregate amount in controversy[3] for this motion, Defendants assumed a Putative Class of 27,068 individuals working for Albertson's in California between February 26, 2022 and March 31, 2026. Frazier Decl., ¶ 3a. Of note, the Putative Class that Defendants identified to assess the Amount in Controversy for this Notice <u>does not</u> include warehouse employees.

33. The below calculations are further conservatively based on the lowest applicable minimum wage in California during the relevant time period from February 26, 2022 through present, of $15.00. Labor Code § 1182.12(b)(1)(F). In addition, the Putative Class Members worked approximately 2,298,313 workweeks between February 26, 2022 and March 31, 2026. *Id.* at ¶ 3d.

34. **Unpaid Hourly and Overtime Wages Claim**. In the Complaint, Plaintiff alleges that "Defendants had a common policy and practice of systemically failing to pay Plaintiff and Class Members proper wages and overtime for all hours worked, at the proper rates of pay." Compl., ¶ 23. Among other things, Plaintiff alleges that

[3] The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014). Although not required to do so, Defendants have established the amount in controversy by referencing Plaintiff's allegations and/or by setting forth information in this notice of removal that demonstrates that the amount in controversy is more likely than not to exceed the jurisdictional minimum.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendants "implemented an unlawful time-rounding policy and practice" and also alleges that Defendants required Plaintiff and the Putative Class Members to work off-the-clock, including by having to clock out and wait until the arrival of Putative Class Members scheduled to work on the subsequent shift. Compl., ¶¶ 24, 82-83. Plaintiff also alleges that the Plaintiff and Putative Class Members were required to clock out for their unpaid meal periods and continue working while off-the-clock. Compl., ¶¶ 24, 83. Plaintiff also alleges that Plaintiff and Putative Class Members were required to use their cell phones "to communicate with management and respond to group chat messages and calls both before and after their shifts as well as during unpaid meal periods." *Id.* Plaintiff further alleges that Plaintiff and the Putative Class Members were required to call Defendants prior to the start of their shifts to confirm whether they were scheduled to work for the day. *Id.* Alleging a "pattern and practice" can reasonably be interpreted to mean that each class member suffered the alleged harm. *Danielsson v. Blood Ctrs. Of the Pac.*, No. 19-cv-04592-JCS, 2019 U.S. Dist. LEXIS 222539, at *2 (N.D. Cal. Dec. 30, 2019) (finding one hour of overtime for every class member, every week, was reasonable where the complaint alleged a "pattern and practice" of failing to pay overtime wages).

35. Based on these allegations, Plaintiff contends that he and the Putative Class Members are entitled to recover unpaid wages, including straight time, overtime, and split shift premiums, attorney's fees, and costs of suit. Compl., ¶¶ 84-88. California law currently applies a four-year statute of limitations to unfair competition claims based on alleged unpaid wage violations. *See Cal. Bus. & Prof. Code* § 17208.

36. ***Total Potential Unpaid Hourly and Overtime Wages***. Defendants deny the validity and merit of Plaintiff's claim for unpaid hourly and overtime wages. However, for the purpose of removal, Defendants conservatively estimate 5 minutes per workweek, based on Plaintiff's allegations that he and the Putative Class Members had to work off-the-clock "consistently" and "systemically." Compl., ¶ 83. The lowest

applicable minimum wage in California during the timeframe from February 26, 2022 through present, of $15.00. This results in a weekly unpaid wage obligation of $1.25 [$15.00/60 minutes x 5 minutes]. As set forth above, there were approximately 2,298,313 workweeks attributable to Putative Class Members between February 26, 2022 and March 31, 2026; thus, Albertson's aggregate unpaid wage obligation under Plaintiff's alleged theory would be $2,872,891.25 [$1.25 x 2,298,313 weeks].

37. **Meal Period Claim**. The Complaint alleges that Defendants "maintained a policy or practice of not providing Plaintiff and members of the Meal Period Sub-Class with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period," prohibited Plaintiff and the Putative Class Members from leaving work premises during meal periods, denied them the opportunity to take timely meal periods prior to the completion of their fifth hour of work, and constantly interrupted Plaintiff and Putative Class Members with work assignments and "the need to respond to Defendants' messages and requests" during meal periods. Compl., ¶ 48. Plaintiff also alleges that Defendants had a policy "of not scheduling each meal period as part of each work shift," did not have a formal written meal policy that encouraged employees to take their meal periods or advising the Putative Class Members of their meal period rights, and had a practice of requiring the Putative Class Members to continue working through their meal periods "due to the excessive workload" and to use their cellular phones for business purposes. Compl., ¶¶ 49, 52. Plaintiff further alleges that Defendants "maintained a policy or practice of failing to pay premium wages" to Putative Class Members when they worked five hours without clocking out for any meal period or when they worked 10 or more hours without taking a second meal period in violation of Labor Code 512 and the applicable Wage Order. Compl., ¶¶ 50-51. Based on these allegations, Plaintiff contends that he and the Putative Class Members are entitled to unpaid premium wages, interest , and costs of suit. Compl., ¶ 54. California law currently applies a four-year statute of limitations to unfair



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

competition claims based on alleged unpaid meal period premium violations. See Cal. Bus. & Prof. Code § 17208.

38. ***Total Potential Liability For Meal Period Compensation:*** Thus, taking as true Plaintiff's claim that Defendants did not provide meal periods to its employees in accordance with the law, then Plaintiff alleges that the Putative Class Members could be eligible for one hour pay for meal periods for each day worked where such a meal period was not provided. Compl, ¶ 77. Here, Defendants assumed a conservative violation rate of one (1) missed meal period every two workweeks based on Plaintiff's broad allegations. *Id.* at ¶ 74. As noted above, the Putative Class Members were employed for approximately 2,298,313 weeks between February 26, 2022 to March 31, 2026. Frazier Decl., ¶ 3c. Defendants then applied the aforementioned $15.00[4] minimum wage rate to the 1,149,156.50 hours of alleged unpaid straight time pay for meal periods based on this conservative estimate (i.e., 0.5 hours in each of the 2,298,313 workweeks attributable to the Putative Class Members from February 26, 2022 to March 31, 2026). *Id.* at ¶¶ 3b and c. Under Plaintiff's' alleged theory, Defendants could be liable for $17,237,347.50 in allegedly unpaid meal period premiums for meal periods that allegedly were not provided [($15.00 x 1,149,156.50 hours of straight time pay], but even if Defendants discounted this figure by 50%, the amount in controversy for this claim would be $8,618,673.75.

39. **Waiting Time Penalties Claim**. Plaintiff seeks penalties under California Labor Code section 203. As set forth in the Complaint, Plaintiff alleges that Defendants failed to timely pay final wages in accordance with the Labor Code to the Putative Class Members. Compl., ¶ 25. Plaintiff alleges that Defendants' failure to timely pay all final wages was willful and that Defendants intentionally adopted policies or practices "incompatible" with Labor Code sections 201 and/or 202. Compl., ¶ 26. As such,

[4] For purposes of calculating potential minimum wage damages in this Notice of Removal, Defendants conservatively utilized the 2022 California minimum wage of $15.00/hour rather than the current minimum wage rate of $16.90/hour.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiff "seeks waiting time penalties from the dates that their final wages have first become due until paid, up to a maximum of thirty days, and interest thereon." Compl., ¶ 27. The statute of limitations for waiting time penalties under Labor Code § 203 is three years. *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010). Defendants deny the validity and merit of Plaintiff's claim.

40. There were approximately 7,373 Putative Class Members (excluding warehouse workers) whose employment ended between January 1, 2024 and March 31, 2026. Frazier Decl., ¶ 3d. Based on the allegations in the Complaint, these 7,373 individuals seek payment for waiting time penalties, interest, attorneys' fees and costs of suit. See Compl., ¶ 27. Further, based upon the lowest applicable California minimum wage rate of $15.00 in 2022, (Lab. Code 1182.12(b)(1)(F)), thirty days (the statutory penalty) of pay for 7,373 individuals under Plaintiff's theory amounts to $26,542,800 [($15.00 x 8 hrs. x 30 days) x 7,373 Putative Class Members], but even if Defendants discounted this figure by 50%, the amount in controversy for this claim would be $13,271,400

**Total Aggregate Minimum Potential Liabilities and Additional Potential Recoveries Based on the Allegations in Plaintiff's Complaint.**

| **AMOUNT IN CONTROVERSY** | |
|---|---|
| **Basis for Claim** | **Amount** |
| Unpaid Hourly and Overtime Wages | $2,872,891.25 |
| Meal Period Premium Wages | $8,618,673.75 |
| Waiting Time Penalties | $13,271,400 |
| TOTAL | $24,762,965 |

41. **Other Damages**. The jurisdictional minimum amount in controversy is met and easily surpassed by conservative estimates of the afore-referenced alleged

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

unpaid hourly and overtime wage, meal period premium, and waiting time penalty claims. Plaintiff is also seeking allegedly unpaid wages at the regular rates of pay for the Putative Class Members, allegedly unpaid split shift premiums, premium wages for alleged failure to provide rest periods, allegedly unpaid sick pay, allegedly unpaid vacation wages, penalties for alleged failure to provide accurate itemized wage statements, allegedly unreimbursed business expenses, damages, statutory penalties, interest, attorneys' fees and costs. Compl., Prayer for Relief. These additional items bolster Defendants' position that the amount in controversy is in excess of $5,000,000. In addition, attorneys' fee awards can properly be included in calculating the amount in controversy, and such awards are commonly in the 25% to 33% range of an award to the class. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that attorneys' fees may be included when calculating the amount in controversy). Notwithstanding the exclusion of the potential liabilities of Plaintiff's remaining claims, Defendants have clearly demonstrated that the potential amount put in controversy by Plaintiff in his Complaint exceeds the $5,000,000 jurisdictional minimum under CAFA.[5]

42. In sum, through Defendants' own investigation and calculations as set forth herein, a preponderance of the evidence supports removal of this matter because CAFA jurisdiction has been established, even based on conservative calculations. Therefore, removal of this matter is appropriate.

## ORIGINAL JURISDICTION – FEDERAL QUESTION

43. The State Court Action is a civil action over which this Court has original jurisdiction under 28 U.S.C. §§ 1331, 1367 and 1441. The Complaint alleges a putative class claim for purported breach of contract on behalf of Plaintiff. Defendants assert that Plaintiff's claim is completely preempted by the National Labor Relations Act

[5] Again, Defendants provide these calculations solely to establish that the amount in controversy exceeds the jurisdictional minimum. Defendants make no admission of liability and deny Plaintiff's right to recover with respect to any aspect of this case.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

("NLRA") and/or Section 301 of the Labor Management Relations Act ("LMRA") and, therefore, this case presents a federal question within the original jurisdiction of this Court. 29 U.S.C. § 185(a).

44. Plaintiff was employed by Albertson's and his employment is governed by a collective bargaining agreement ("CBA") negotiated with the United Food & Commercial Workers International Union, CLC ("UFCW"). *See* CBA (attached to the Declaration of Crystal Maving as Ex. A, ¶ 3). A true and correct copy of the applicable CBA that governed Plaintiff's employment with Albertson's is attached to the Maving Decl. as Exhibit A, and is incorporated herein by this reference as if set forth in full. The UFCW, the union that is a party to the CBA, is a labor organization within the meaning of the NLRA. 29 U.S.C. § 152(5).

45. Under the "complete preemption" doctrine, federal question jurisdiction exists and removal is proper wherever federal law completely supplants state law in a particular area. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 64 (1987). To determine whether a state law claim is preempted by the LMRA, an inquiry must first be made to determine whether the right asserted is "conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted and the analysis ends there. If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective bargaining agreement.' If such dependence exists, then the claim is preempted by section 301…." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007); *Bernardi v. Amtech/San Francisco Elevator Co.*, 2008 WL 2345153 at * 3 (N.D. Cal. 2008).

**LABOR CODE SECTION 510 CLAIMS ARE PREEMPTED**

46. Plaintiff's third cause of action alleges, among other things, that Defendants failed to pay him and the putative class overtime wages due under California law. Compl., ¶¶ 67-88. The requirement that employees receive overtime

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

compensation is set forth in California Labor Code Section 510; however, there is an exception to California's overtime requirements for employees covered by a CBA. Pursuant to California Labor Code Section 514, California's overtime requirements "do not apply to an employee covered by a valid [CBA] if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Lab. Code § 514.

47. As explained above, Plaintiff and certain putative class members were subject to a valid CBA at all times relevant to this action. Moreover, the governing Collective Bargaining Agreement expressly covers employee wages, hours and working conditions. CBA (attached as Ex. A to the Maving Decl.), Article 5 – Working Hours and Overtime, Article 6 – Wages, Article 14- General Conditions, and Appendix A – Hourly Pay Rates and Progressions for Employees.

48. The minimum wage in California during the relevant time period was $15.00 from January 1, 2022 through December 31, 2022 (Lab. Code § 1182.12(b)(1)(F)), $15.50 per hour from January 1, 2023 to December 31, 2023 (*Id.* at (c)), $16.00 per hour from January 1, 2024 to December 31, 2024 (*Id.*) $16.50 per hour from January 1, 2025 to December 31, 2025 (*Id.*), and $16.90 from January 1, 2026 to the present (*Id.*). During the relevant time period, the lowest hourly wage paid to many putative class members subject to the CBA was more than 130% of the minimum wage. (Maving Decl., Ex. A (CBA, Appendix A)). Moreover, the CBA specifically provides for premium pay for overtime hours worked. *Id.* at Article 5.F- Working Hours and Overtime.

49. The CBA also provides procedures for Albertson's employees to grieve and arbitrate disputes pertaining to their employment with Albertson's, including any purported failure on Albertson's part to properly compensate employees. *Id.* at Article

12 – Adjustment and Arbitration. Any arbitration decision rendered under those grievance procedures is final and binding on Albertson's and the affected employee. *Id.* at Article 12(C).

50. Based on the foregoing, Plaintiff's cause of action for unpaid overtime compensation is substantially dependent on an analysis and interpretation of the provisions of the CBA. As Plaintiff is exempt from California's overtime requirements under Labor Code Section 514, any claim that he may have for overtime must necessarily arise out of the CBA, and is thus completely preempted by the LMRA. *See, e.g., Firestone v. Southern California Gas Co.*, 219 F.3d 1063 (9th Cir 2000) (finding that the LMRA preempted a state law claim for overtime that required an interpretation of a CBA).

**LABOR CODE SECTION 246 CLAIMS ARE PREEMPTED**

51. Under Section 245.5(a)(1), an employee is exempt from California's Healthy Workplaces, Healthy Families Act if the employee is covered by a valid CBA that "expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for paid sick days or a paid sick leave or paid time off policy that permits the use of sick days for those employees, final and binding arbitration of disputes concerning the application of its paid sick days provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate."

52. Ninth Circuit courts hold that a sick pay claim is preempted under the LMRA if it falls under Labor Code Section 245.5. *Betty Hussein v. Marin Gen. Hosp.*, 2025 U.S. Dist. LEXIS 4718, *13-14 (N.D. Cal. 2025).

53. Plaintiff here has asserted a claim under Section 246. His claim is completely preempted by Section 301 of the LMRA because the CBA meets all of Section 245.5(a)(1)'s requirements.

54. The CBA provides for wages, hours of work, and working conditions.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

CBA, Articles 5 and 6, Appendix A. The CBA also provides for paid sick days with a policy that permits the use of sick days for the covered employees Article 10 (Sick Leave). As stated above, moreover, the CBA provides final and binding arbitration for all disputes concerning the application of paid sick days provisions, and provides a premium wage for all overtime hours worked, and regularly hourly rate of pay of no less than 30 percent more than the state minimum wage rate. Resolution of this claim will thus necessarily require interpretation of the CBA. CBA, Articles 12 (Adjustment and Arbitration), Article 5.F. (Overtime), and Appendix A (Hourly Pay Rates and Progressions for Employees);

**LABOR CODE SECTION 227.3 CLAIMS ARE PREEMPTED**

55. Under Section 227.3 of the California Labor Code, "[u]nless otherwise provided by a collective-bargaining agreement," vested vacation time is paid as wages upon an employee's termination of employment.

56. An employee may waive his right under section 227.3 to payment for accrued vacation in a collective bargaining agreement if the agreement to do so is clear and unmistakeable. *Jaco v. Winco Holdings, Inc.*, 2019 U.S. Dist. LEXIS 55882, at *10-11 (E.D. Cal. 2019). For example, if a CBA provides the plaintiff's right to receive vested vacation time through an applicable vacation plan, courts deem the CBA to be an "alternate contract for vacation pay" and the LMRA preempts the related claim under section 227.3. *Rodriguez v. Gonsalves & Santucci*, 2022 U.S. Dist. LEXIS 8645, at *12 (N.D. Cal. 2022). Similarly, in *Rodriguez*, the court held that a CBA had "clearly and unmistakeably" identified the right to pay for accrued vacation and effectively waived that right through a CBA that provided that "[v]acation earned but not taken will not be paid to employees terminated for gross misconduct." *Id.* at 13.

57. Here, the CBA clearly and unmistakeably waived Plaintiff's right under section 227.3. Article 8 of the CBA, expressly titled "Vacations," allots specific amounts of vacation time to employees depending on their years of service and sets

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

forth detailed terms for vacation payouts. Article 8(D) includes a "pro rata" discussion in that regard that provides that upon termination an employee shall receive all vacation pay due "prorated on the basis of the number of straight-time hours worked, provided that the employee has been in the continuous employ of the Employer for six (6) months or longer." Vacation pay is to be "prorated according to the ratio that the straight-time hours actually worked bear to 2,080 hours." The same section then provides that "[t]he forfeiture of vacation pay under section 227.3 of the California Labor Code for proven or admitted dishonesty shall not be retroactive beyond the employee's last anniversary date." The CBA thus references section 227.3 of the California Labor Code specifically and effectively waives that right for instances of "proven or admitted dishonesty."

58. Article 8.D.4. of the CBA provides that an employee who has been employed for 5 years or more shall, upon termination, "receive accrued vacation pay on the basis of three (3) weeks per year for all time in excess of five (5) years for which no vacation pay has been received."

59. Because the CBA clearly and unmistakeably waived Plaintiff's right under section 227.3, his claim is exempt and, consequently, preempted under the LMRA. *Rodriguez*, 2022 U.S. Dist. LEXIS 8645, at *12.

## SUPPLEMENTAL JURISDICTION

60. This Court has supplemental jurisdiction over Plaintiff's remaining causes of action (allegedly unpaid wages at an agreed upon rate, allegedly unpaid split shift premiums, premium wages for alleged failure to provide rest periods, penalties for alleged failure to provide accurate itemized wage statements, allegedly unreimbursed business expenses, and unfair competition) because those claims share a common nucleus of operative fact with Plaintiff's preempted causes of action because those claims are entirely derivative of the alleged failure to fully compensate Plaintiff in alleged breach of the alleged contract. See 28 U.S.C. §§ 1367(a) and 1441(c). No California state law issue predominates, and this Court's exercise of supplemental

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

jurisdiction under 28 U.S.C. § 1441(c) is thus appropriate. Accordingly, this Court has jurisdiction over the entire Complaint and removal is proper.

**<u>TIMELINESS OF REMOVAL</u>**

61. Pursuant to 28 U.S.C. § 1446(b), this removal is timely because Defendants are filing this removal within thirty (30) days following service of the Summons and Complaint on March 5, 2026. Wheatfall Decl. ¶ 9, Ex. 1.

**<u>NOTICE TO PLAINTIFF</u>**

62. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Clerk of the Superior Court of the State of California in and for the County of San Diego.

**WHEREFORE**, for all of the foregoing reasons, Defendants hereby remove the State Court Action now pending in the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

Respectfully submitted,

Dated: April 3, 2026

REED SMITH LLP

By:



Mara D. Curtis
Brian M. Noh
Tanner J. Hendershot

Attorneys for Defendants
ALBERTSON'S LLC, ALBERTSONS COMPANIES, INC., and ALBERTSONS SAFEWAY LLC